UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AF HOLDINGS LLC,

  Plaintiff,

v.

RAJESH PATEL,

  Defendant.

CASE No.: 0:13-mc-00068 (JNE/FLN)

**NON-PARTY PAUL HANSMEIER'S OPPOSITION TO RAJESH PATEL'S MOTION TO COMPEL AND FOR CONTEMPT**

Paul Hansmeier ("Respondent"), a non-party to the action pending in the United States District Court for the Northern District of Georgia, opposes the Motion to Compel and for Civil Contempt ("Contempt Motion") that was filed against him by Movant, Rajesh Patel. The Contempt Motion is patently frivolous, completely unnecessary and is being prosecuted in bad faith. As discussed below, Movant's motion is based entirely on Respondent's alleged non-compliance with a subpoena that was never properly served on him. Thus, at the outset, there is nothing that Respondent could possibly in contempt of. Further, there is no Court order directed to Respondent in this proceeding.

Additionally, even considering that Movant is alleging non-compliance with a subpoena, there is still no basis for contempt. Assuming that Respondent was properly served the subpoena—and he was not—the information sought in the subpoena is the subject of a motion for a protective order that is currently pending in the Northern

District of Georgia[1]; there, the district court has indicated that it intends to set a hearing on the outstanding motion for a protective order, along with other discovery-related motions.[2] According to Movant, several non-party subpoena recipients, including Respondent, are awaiting the district court's ruling on the protective order motion.[3] These non-parties include Internet Service Providers, major Internet companies and other non-parties who are concerned with contravening the district court's expressed intention to decide the outstanding discovery disputes. Respondent explained all of this to Movant's counsel. *See* Exhibit A.

Finally, Respondent has reason to believe that Movant's counsel is acting in bad-faith. Specifically, the Northern District of Georgia enjoined Movant from filing future motions without first obtaining leave of the court. In a post-injunction filing, Movant acknowledged that "an issue exists as to whether filing motions to compel in non-Georgia jurisdictions violates the Courts [sic] ECF # 83 Order barring filing "motions" and "responses.""[4] Yet, Movant has proceeded to prosecute the instant Contempt Motion without informing the Court of these very legitimate concerns.

Movant's counsel has ignored the need to simply wait until the Northern District of Georgia rules on the pending motion for a protective order. He is acting in potential

---

[1] *See AF Holdings, LLC v. Rajesh Patel*, No. 2:12-cv-00262-WCO (N.D. Ga. Aug. 26, 2013) at ECF No. 68.

[2] *Id.* at ECF No. 82.

[3] *Id.* at ECF No. 84.

[4] *Id.* at ECF No. 84.

violation of an order of the Northern District of Georgia and, by doing so, has added to the expenses of a non-party and his own client, and unnecessarily occupied this Court's time. Accordingly, the Court should award Respondent his fees and expenses in opposing Movant's Motion and deny the Contempt Motion as premature and baseless.

## BACKGROUND

Respondent was "served" with a subpoena *duces tecum* during a court hearing on August 5, 2013. Because attorneys and litigants who come before the court are immune from service of process in other suits, service of the subpoena was defective. Nevertheless, because Movant would ostensibly just re-serve the subpoena, and because Respondent did not possess a meaningful quantity of responsive documents, Respondent intended to voluntarily comply with the document request to the extent allowed by the attorney-client privilege. The subpoena served on Respondent had a compliance deadline of August 20, 2013, but Respondent was unable to comply by that date due to his having been on vacation the prior week. Further, Respondent inadvertently calendared the subpoena deadline for August 30.

On August 22, 2013, Respondent was contacted by attorney Blair Chintella, who enquired about Respondent's compliance. *See* Exhibit A. Respondent informed Mr. Chintella that his calendar indicated a response deadline of August 30, and asked Mr. Chintella if he was mistaken. *Id.* Mr. Chintella confessed that he was unsure of what the response deadline was, and indicated that Respondent could have until the 30th to respond. *Id.*

On August 27, 2013, Respondent received a follow up e-mail from Mr. Chintella, who indicated he "fully intend[ed] to file something in Minnesota" if Respondent did not comply with the subpoena by the close of business the following day. *Id.* When Respondent expressed his confusion over why the deadline of the 30th was no longer acceptable, Mr. Chintella explained that he never agreed to provide an extension until the 30th, but would agree to an extension until the 29th. *Id.* He also indicated that a third-party attorney would be willing to attest to the conversation, but he was never able to provide an attestation from this attorney. *Id.* He also threatened to file an ethics complaint against Respondent if Respondent did not accept his version of the previous conversation. *Id.*

Respondent was deeply suspicious of Movant's efforts to cajole compliance with a subpoena—efforts which went so far as to threaten ethics violations for noncompliance. *Id.* Out of an abundance of caution, on August 30, 2013, Respondent checked the docket of the underlying action and discovered that a motion to quash was pending "with respect to the very subpoena [he] had been discussing." *Id.* Upon informing Mr. Chintella of this fact, Mr. Chintella did not express behavior exhibiting an honest mistake, but stated that it was Respondent's "duty" to "check the docket where the underlying case is pending." *Id.*

Respondent indicated his concern with Mr. Chintella's conduct, and expressed his willingness to "comply with the subpoena should the [Northern District of Georgia] deny

the motion to quash." *Id.* Without warning, and with no effort to meet and confer regarding the motion to quash or for contempt, Movant filed the instant motion.[5]

## ARGUMENT

An order of civil "contempt" is proper only when the moving party proves that an underlying order was violated by the alleged contemnor by clear and convincing evidence, *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000), which establishes that: (1) "the allegedly violated order was valid and lawful"; (2) "the order was clear and unambiguous"; and (3) "the alleged violator had the ability to comply." *FTC v. Leshin*, 618 F.3d 1221 (11th Cir. 2010); *see also Chicago Truck Drivers*, 207 F.3d at 506. A party sought to be held in contempt may defend on grounds that he was unable to comply. *Id.*

### 1. The Subpoena is Unenforceable Because it was not Properly Served on Respondent

The Contempt Motion fails because Respondent is under no obligation to respond to a subpoena that was not properly served on him. It has long been established that those who come before a court are immune from service of process in other suits. *See Lamb v. Schmitt*, 285 U.S. 222, 225 (1932). This immunity extends to attorneys. *See id.* Movant's subpoena was served on Respondent at 10:40 a.m. on August 5, 2013, at the following address: 300 South 4th Street, Suite 9W, Minneapolis, MN. This address is the chambers

---

[5] Movant's counsel's Rule 7.1(a) misrepresentation regarding satisfaction of this District's meet-and-confer requirements is a second reason why Respondent believes the Contempt Motion is being prosecuted in bad faith. Respondent would be pleased to produce phone records and e-mail records showing that attorney Godfread failed to communicate once with Respondent prior to filing the Contempt Motion, much less fulfilled his obligations to engage in a substantive meet and confer.

5

address for the Honorable Magistrate Judge Noel at the U.S. Federal Courthouse in Minneapolis, Minnesota. On that date and time, Respondent was attending a case management conference scheduled for 11:00 a.m. before the Magistrate Judge. *See AF Holdings LLC v. John Doe*, No. 12-cv-1445-JNE-FLN (July 16, 2013) at ECF No. 15. While the immunity can be waived at the district court's discretion, no such waiver has occurred here. As such, service of the subpoena was defective.[6]

### 2. Respondent Violated no Order

There is no basis for holding Respondent in contempt because there is no order by this Court directed to Respondent that was violated; there was only a general discovery order issued in the Northern District of Georgia allowing Movant to take a modicum of discovery. Such a general discovery court order is not a sufficient basis for contempt because (1) it was not directed to Respondent specifically, and (2) Respondent is a non-party. If Respondent was disobeying an order compelling him to comply with Movant's subpoena—which he has no intention of doing—*then* and only *then*, might a contempt motion be appropriate.

Movant nonetheless claims contempt is proper because a subpoena "is a court order." Mot. at 3. It is not. "Although on its face Rule 45(e) appears to permit a finding of contempt against a person who fails without adequate excuse to obey a subpoena, courts have generally been reluctant to invoke contempt powers for failure to comply with a

---

[6] The service of the Contempt Motion was also defective. A court may obtain jurisdiction over someone only via service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987). Nothing in the Federal Rules authorizes service of a motion for contempt in a miscellaneous action via mail, as service was purportedly made here.

6

subpoena *without the prior issuance of a court order compelling that compliance."* *NXIVM Corp. v. Bouchy*, 2011 WL 5080322, at *3 (N.D.N.Y. Oct. 24, 2011) (emphasis added). This is true "particularly with respect to non-parties," such as Respondent here. *Id.* Thus, "[b]efore sanctions can be imposed ... there *must be a court order compelling discovery." Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn 1994) (emphasis added). *See also Kant v. Seton Hall Univ.*, 2009 WL 5033927, at *1 (D.N.J. Dec. 14, 2009) (court involvement through some type of order must be present before contempt punishing failure to comply).

The rationale for such intermediate action by a court *before* making a contempt finding, is that "[a] subpoena [] from the Clerk of the Court, or issued by an attorney without any court involvement," the latter of which it is admitted is in issue here, *see* Mot. at Ex. A, "is not of the same order as one issued by a judicial officer [resolving] a specific dispute." *Cruz*, 159 F.R.D. at 368.[7] Indeed, even the authority that Movant cites, *SEC v. Hyatt*, 621 F.3d 687 (7th Cir. 2010), cited in Mem. at 3, recognizes this:

> It does not follow ... that a contempt motion for disobedience of a nonparty subpoena should be treated in exactly the same way as a contempt motion for violation of another kind of court order .... '[B]ecause the command of the subpoena is not in fact uttered by a judicial officer, contempt should be

---

[7] *See also Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364-65 (2d Cir. 1991) ("Court intervention serves to alert the offending party to the seriousness of non-compliance[,] permits judicial scrutiny of the discovery request[,] ... functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations. A subpoena issued by counsel does not fulfill these purposes."). "Judicial scrutiny of the discovery request" is especially relevant here, where the Protective Order Motion, which if granted would prohibit compliance with the subpoena, was pending on Respondent's deadline for responding to the subpoena and remains pending.

7

very sparingly applied when the non-party witness has been overborne by a party or attorney.'

*Id.* at 693-94 (quoting Rule 45(e) Advisory Committee Notes to 1991 Amendments). Accordingly, "[w]here there is no involvement of a court (*e.g.*, an order to compel), sanctions are not available under Rule 45(e)." *Cruz*, 159 F.R.D. at 368; *see also Kant*, 2009 WL 5033927, at *1.

### 3. Respondent Cannot Comply With the Subpoena Absent Further Action by the Northern District of Georgia

Movant's Contempt Motion suggests that Respondent should forsake his professional obligations for Movant's benefit and that Respondent should act regardless of the Northern District of Georgia's discretion and authority. Respondent is in no position to ignore the mandates of any court, nor is it Respondent's obligation to decide who is in the right between Movant, who attempted (unsuccessfully) to serve a subpoena on Respondent, the plaintiff, who has filed a Protective Order Motion, or any other objectors. That is for the Northern District of Georgia to decide. Only after that district court issues an order resolving those matters may Respondent comply with the subpoena. These circumstances thus clearly present an "inability" by Respondent to comply with the subpoena, so as to preclude a contempt finding even if the subpoena was deemed the equivalent of a court order.

### 4. Respondent Has Not "Waived" Any "Objection"

There is no merit to Movant's suggestion that by not objecting in the first 14 days after receipt of the subpoena, Respondent "waived" his right to delay compliance when the plaintif filed the motion for a protective order. Mot. at 3 (seeking application of Fed.

8

R. Civ. P. 45(c)(2)(B)(i), and citing cases). As an initial matter, Respondent did not "object" to the subpoena but honored the district court's order requiring disputes over the discoverability of the information sought in Movant's subpoena to play out. Plaintiff filed a motion for protective order and to quash, and Respondent simply is awaiting the district court's resolution of those matters. Indeed, "a motion to quash a subpoena is a *separate* procedural device from [] objections to the subpoena," and F.R.C.P. 45 "only state[s] that [a] motion to quash must be 'timely[.]'" *COA Inc. v. Xiamei Houseware Group Co., Inc.*, 2013 WL 2332347, at *2 (W.D. Wash. May 28, 2013). *Cf., e.g., Forsythe v. Browne*, 281 F.R.D. 577, 587 (D. Nev. 2012) ("objection must be served within fourteen days after service of the subpoena on non-party," yet "a party cannot object to a subpoena ... served on a nonparty, but must [] file a motion to quash or seek a protective order").

Indeed, the "failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B)" will *not* constitute waiver and "may be forgiven in unusual circumstances and for good cause," which may include "concern" that "compliance could cause ... legal consequences" to a subpoenaed non-party. *See Motorola Credit Corp. v. Uzan*, __ F.Supp.2d __, 2013 WL 4125053, at *6 (S.D.N.Y. Aug. 12, 2013). Respondent also remained in contact with Movant's counsel, who was aware of the underlying order, which mitigates against contempt.[8]

---

[8] *Id. Accord, Powell v. Time Warner Cable, Inc.*, 2010 WL 5464895, at *4 (S.D. Ohio Dec. 30, 2010) ("unusual circumstances exception" to 14-day limit for objecting to subpoenas applied where "subpoenaed party was a non-party; there was no showing of bad faith; the subpoenaed party had produced documents and cooperated with [] issuing party; and ... subpoenaed and issuing parties ... engaged in ongoing communications"); *Century 21 Real Estate, LLC v. All Prof. Realty, Inc.*, 2012 WL 2090434, at * 4-*5 (E.D.

9

### 5. The Objection and Pending Motion Are Valid Grounds for Respondent to Temporarily Delay Compliance With the Subpoena

Finally, the cases Movant cites for the proposition that the filing of a motion for a protective order or to quash does not "discharge a person's duty to comply with discovery" are inapposite. Mem. at 3-4 (citing *Hepperle v. Johnston*, 590 F.2d 609 (5th Cir. 1979); *Batt v. Kimberly-Clark Corp.*, 438 F.Supp.2d 1315 (N.D. Okla. 2006)). Those cases involve appearing at depositions, which a deponent can still attend without rendering a motion for a protective order or to quash moot—the deponent can refuse to answer questions that implicate the subject of the motion unless and until a court orders a response. With, for example, a subpoena seeking disclosure of documentary information, that is not possible. Once information is disclosed, it cannot be "undisclosed," even if a court later upholds an objection and refuses to compel disclosure.[9]

The rule that pending motions for a protective order do not excuse attendance at a deposition does not apply to similar motions for written discovery. *E.g., Nelson v. Capital*

---

Cal. June 8, 2012) ("acting in good faith" and maintaining "regular contact ... regarding production" excuse waiver and preclude finding of contempt for failure to comply).

[9] Moreover, *Hepperle*, did not involve a contempt motion filed in response to a protective order filed in good faith to object to a subpoena seeking *written discovery*, but rather an appeal from dismissal for want of prosecution resulting from plaintiff's repeated failure to appear at a deposition, based on a frivolous pending motion for protective order despite numerous orders requiring attendance. *See* 590 F.2d at 613 (citing *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964)). Meanwhile, in *Batt*, which involved a motion for sanctions for a non-party's failure to appear at a deposition, the defendant did not move to quash the notice or take any similar action to resolve the stalemate, 438 F.Supp.2d at 1316, while here, the Protective Order Motion bears directly on whether Respondent can comply with the subpoena.

*One Bank*, 206 F.R.D. 499, 500 (N.D. Cal. 2001). *Nelson* distinguished *Pionche Mines*, relied upon in *Hepperle*, thusly:

> [A] motion for protective order does not ordinarily prevent a deposition from going forward absent the court's issuance of a protective order[, but] ... the party responding to *written* discovery may either object ... or seek a protective order.

*Id.* (citing Wright & Miller, *Federal Practice and Procedure* § 2035, at 152, 154 (3d ed. 2010) ("with regard to depositions, the [protective] order should ordinarily be obtained before the date set for the discovery and failure to move at that time has been held to preclude objection later," while for "interrogatories, requests for production ... and requests for admission, proper procedure calls for the responding party to object" or to "seek[] a protective order")). There accordingly can be no finding of contempt.

6. **The Court Should Defer to the Northern District of Georgia's Discretion Regarding Movant's Discovery Before Deciding Whether to Compel Compliance With the Subpoena**

Even if the subpoena was served—and it was not—this Court should nevertheless defer to the Northern District of Georgia's forthcoming ruling on plaintiff's motion for a protective order. The Northern District of Georgia allowed "each [party] to have some discovery, ... but not much." The fact that the Northern District of Georgia denied a prior protective order motion virtually immediately, but on the second motion for a protective order is taking more time, suggests that the present motion might be receiving further consideration, and only reinforces the importance of deferring to the sound judgment of the district court overseeing discovery in the underlying action.

## CONCLUSION

For the foregoing reasons, Respondent respectfully submits that the Movant's Motion for Civil Contempt should be denied. Further, as the Contempt Motion is without basis and sanctionable, the Court should award Respondent his costs and fees incurred with responding to the motion. Although Respondent is proceeding *pro se*, he incurred costs and fees in the course of seeking legal advice regarding the instant motion. Respondent will be pleased to provide an affidavit of costs and fees at the Court's instruction.

/s/ Paul Hansmeier
Class Justice PLLC
100 S. 5th St. Ste. 1900
Minneapolis, MN 55402
*Pro se*